## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| FLEET CONNECT SOLUTIONS LLC, | |
|---|---|
| Plaintiff, | Civil Action No. 2:25-cv-00658 |
| v. | **JURY TRIAL DEMANDED** |
| PACCAR, INC. d/b/a PETERBILT MOTOR CO., | |
| Defendant. | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against PACCAR, Inc. d/b/a Peterbilt Motor Co. ("Peterbilt" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"):

|   | Patent | Available At: |
|---|---|---|
| 1 | 7,058,040 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2 | 7,260,153 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 3 | 8,005,053 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| 4 | 7,656,845 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 5 | 7,742,388 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 6 | 6,647,270 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| 7 | 8,494,581 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |

| | Patent | Available At: |
|---|---|---|
| 8 | 7,092,723 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7092723 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. Plaintiff Fleet Connect Solutions LLC is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Defendant PACCAR, Inc. d/b/a Peterbilt Motor Co. is a corporation organized under the laws of the State of Delaware with a place of business at 1700 Woodbrook St., Denton, TX 76205, and may be served with process through its registered agent, Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. See Home Page, Peterbilt Motors Company, https://www.peterbilt.com/ (indicating that Peterbilt's corporate office is at 1700 Woodbrook Street, Denton, TX 76205).

5. On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

6. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and

1391(c) because it has maintained established and regular places of business in this District, has transacted business in this District, and has committed acts of patent infringement in the District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

10. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; (iii) having an interest in, using or possessing real property in Texas and this District; (iv) and having and keeping personal property in Texas and in this District.

11. Specifically, Defendant intends to do and do business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

12. On information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at locations in this District, including, but not limited to, facilities at the following addresses: 1700 Woodbrook Street, Denton, TX 76205, *Contact Us*, PACCAR, https://www.paccar.com/about-us/contact/; 11042 Highway 69N, Tyler, TX 75706; 1931 North King's Highway, Nash, TX 75569; and 3901 N. Medford

Drive, Lufkin, TX 75901. *See Find a Dealer*, PETERBILT MOTORS COMPANY (last visited Feb. 7, 2025), https://www.peterbilt.com/find-a-dealer.

13. In addition to conducting this business, Defendant employs a number of individuals within this District. These individuals' employment with Defendant is conditioned upon and based on their residence and continued residence within this District to further the specific infringing business activities of Defendant within the District. *See, e.g.*, *Careers*, PACCAR, https://jobs.paccar.com/search/?createNewAlert=false&q=&locationsearch=&optionsFacetsDD_country=&optionsFacetsDD_state=&optionsFacetsDD_city=&optionsFacetsDD_facility=Peterbilt+Motors+Company&optionsFacetsDD_lang= (listing two internship opportunities based in Denton, TX).

14. Defendant's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Defendant affirmatively acted to make permanent operations within this District. *See In re: Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985).

15. Defendant commits acts of infringement from this District, including, but not limited to using, installing, testing of the Accused Products, selling and offering to sell the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

16. Defendant instructs its employees, agents, and contractors on how to install and use the Accused Products.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

17. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

18. Based upon public information, Defendant uses (including testing), causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes fleet management platforms, diagnostic platforms, tracking solutions, and vehicles including the same, including, but not limited to,

(1) all on board diagnostic systems, connected vehicle systems, and Electronic Logging Device Systems ("ELDs"), as the term ELDs is used by the USDOT, FMCSA, and/or mandated as part of MAP-21 that commercial motor vehicle operators, such as Peterbilt, must use (see https://eld.fmcsa.dot.gov/) that communicate with in-cab tablets, smartphones, laptops, computers, and/or remote devices using Bluetooth, 802.11, GNSS/GPS, GSM, CDMA, LTE, and/or 5G and their various subsections and functionally similar protocols or standards including, but not limited to Peterbilt's SmartLINQ, ConnectedFleet®, and Virtual Vehicle™ systems/platforms;

(2) all Asset Tracking Devices (including, but not limited to, any product, service, device, or instrumentality that supports tracking, routing, monitoring, maintenance, messaging, workflow, and compliance for vehicles, cabs, trailers, containers, and equipment and that communicates using Bluetooth, 802.11, GNSS/GPS, GSM, CDMA, LTE, and/or 5G and their various subsections and functionally similar protocols or standards), including Asset Tracking Devices used in Peterbilt's SmartLINQ, ConnectedFleet®, and Virtual Vehicle™ systems/platforms;

(3) any Fleet Management or diagnostic Software/Application/Website/Platform/Portal that provide, process, and/or display routing, diagnostic, location, tracking, status information, vehicle alerts or information, or driver alerts or information from or to any of the systems described in (1)-(2) above;

(4) other substantially similar products and services offered in the past or the future, and

(5) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

See also **Exhibits A–H** (Evidence of Use Charts Regarding Infringement of the Asserted Patents).

19. The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations,

including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

20. The Accused Products perform singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM sybmols.

21. The Accused Products, among other things, generate and transmit packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols.

22. The Accused Products also track, analyze, and report vehicle maintenance needs and driver warnings associated with a vehicle, tracks or causes to be tracked vehicle locations, and allows for communication between a system administrator and a remote unit to communicate, e.g., advisory notifications.

23. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

24. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

25. The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006 after full and fair examination of Application No. 09/962,718, which was filed on September 21, 2001.

26. Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against

infringers and to collect damages for all relevant times.

27. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

28. The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

29. The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30. Defendant has directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

31. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in the claim chart attached hereto as **Exhibit A**.

32. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

33. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34. The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007 after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

35. Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

36. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

37. The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

38. The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39. Defendant has directly infringed one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused

Products.

40. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent, as detailed in the claim chart attached hereto as **Exhibit B**.

41. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,005,053

42. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

43. The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010. A Certificate of Correction was issued on February 14, 2012.

44. Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

45. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '053 patent.

46. The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and

methods of data transmission in wireless communication systems.

47. The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48. Defendant has directly infringed one or more claims of the '053 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

49. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent, as detailed in the claim chart attached hereto as **Exhibit C**.

50. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,656,845</u>

51. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

52. The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172, which was filed on April 11, 2006. A Certificate of Correction was issued on November 30, 2010.

53. Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent,

including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

54. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

55. The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

56. The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57. Defendant has directly infringed one or more claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

58. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent, as detailed in the claim chart attached hereto as **Exhibit D**.

59. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:   INFRINGEMENT OF U.S. PATENT NO. 7,742,388

60. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61. The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed July 20, 2005.

62. Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

63. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

64. The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

65. The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66. Defendant has directly infringed, and continues to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and

external testing of the Accused Products.

67. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in the claim chart attached hereto as **Exhibit E**.

68. Defendant had knowledge of the '388 patent at least as of the date when it received this Complaint.

69. Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. *See* **Exhibit E**.

70. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.

Defendant's inducement is ongoing.  See **Exhibit E**.

71. Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  See **Exhibit E**.

72. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

73. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

74. Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

75. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 6,647,270</u>

76. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as

though fully set forth in their entirety.

77. The USPTO duly issued U.S. Patent No. 6,647,270 (the "'270 patent") on November 11, 2003, after full and fair examination of Application No. 09/659,074, which was filed September 11, 2000.

78. Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

79. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

80. The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

81. The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

82. Defendant has directly infringed one or more claims of the '270 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

83. Defendant has directly infringed, either literally or under the doctrine of

equivalents, at least claim 1 of the '270 patent, as detailed in the claim chart attached hereto as **Exhibit F**.

84. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 8,494,581

85. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86. The USPTO duly issued U.S. Patent No. 8,494,581 (hereinafter, the "'581 patent") on July 23, 2013 after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

87. Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

88. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

89. The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

90. The written description of the '581 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

91. Defendant has directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

92. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent, as detailed in the claim chart attached hereto as **Exhibit G**.

93. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VIII:** **INFRINGEMENT OF U.S. PATENT NO. 7,092,723**

94. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

95. The USPTO duly issued U.S. Patent No. 7,092,723 (the "'723 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784, which was filed October 6, 2003.

96. Fleet Connect owns all substantial rights, interest, and title in and to the '723 patent, including the sole and exclusive right to prosecute this action and enforce the '723 patent against infringers and to collect damages for all relevant times.

97. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '723 patent.

98. The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

99. The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100. Defendant has directly infringed, and continues to directly infringe, one or more claims of the '723 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

101. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '723 patent, as detailed in the claim chart attached hereto as **Exhibit H**.

102. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

103. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

104. WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. Judgment that Defendant accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

c. Judgment that Defendant's infringement of the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284

d. Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 24, 2025

Respectfully submitted,

By: /s/ C. Matthew Rozier

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

**Exhibits**

A. Claim Chart for U.S. Patent 7,058,040
B. Claim Chart for U.S. Patent 7,260,153
C. Claim Chart for U.S. Patent 8,005,053
D. Claim Chart for U.S. Patent 7,656,845
E. Claim Chart for U.S. Patent 7,742,388
F. Claim Chart for U.S. Patent 6,647,270
G. Claim Chart for U.S. Patent 8,494,581
H. Claim Chart for U.S. Patent 7,092,723